# Bates et al. v. Dixon et al.

(Decided Oct. 3, 1933.)

HAWK & LEWIS for appellants.

EMERY L. FRAZIER and J. M. DIXON for appellees.

·OPINION OF THE COURT BY · CREAL, COMMISSIONER—Affirming.

At the regular election for school trustees held in subdistrict No. 70 in Letcher county in July, 1932, W. R. Bates received 27 votes; Drexie Banks 27 votes, Rebecca Back 28 votes, ·Wilburn Dixon 21 votes, Willie Back 20 votes, and Ira Dixon 20 votes; all of which was duly certified by the clerk of the election to the county board of education and the board issued certificates of. election to the three candidates receiving the highest number of votes.

The ·unsuccessful candidates, Ira· Dixon; Wilburn Dixon, and Willie Back, each instituted an action against the three successful candidates, and as grounds for contest alleged: (1) That ·W. R. Bates was not a resident of subdistrict 70, and therefore not legally qualified to hold office; (2) that Edna Lewis, Sam Lewis; ·Bonnie Duke, Hattie Bowling, Pierce Bowling, Sallie Bowling, W. R. Bates, Annie Bates, Mary Jane Bates, Jerry Combs, Cecil Combs, Newell Combs; Fred Stamper,. Jessie Back, Jane Back, Troy Back, and Marlin Back were not legal voters of the subdistrict, and their votes should be purged from the list of those voting for contestees.

The cases were heard together on the issues as joined on these grounds, and after hearing evidence offered by the respective parties, it was adjudged that:

480

W. R. Bates, Annie Bates, Mary Jane Bates, Jerry Combs, Cecil Combs, Jessie Back, Jane Back, and Marlin Back were legal voters of the subdistrict and qualified to vote in the election; that their votes were properly cast and counted for each of contestees (however, the court expressed doubt as to the legality of the votes cast by Jessie Back, Jane Back, and Marlin Back); that Sam Lewis, Edna Lewis, Bonnie Duke, Pierce Bowling, Hattie Bowling, Sallie Bowling, Newell Combs, and Troy Back were not legal voters or entitled to vote in the subdistrict election, and that their votes should be deducted from the vote as certified for each of the contestees; that Fred Stamper whose vote was cast and counted for the contestees, Drexie Banks and Rebecca Back, was not a legal voter and not entitled to vote in the subdistrict, and his vote should be deducted from the list as certified for these contestees; that after deducting such illegal votes from the total vote cast for each of the contestees they received the following legal votes respectively: W. R. Bates, 19; Drexie Banks, 18; and Rebecca Back, 19; and, further, that each of the contestants received a majority of the legal votes cast and counted in the election and therefore they were entitled to all the rights, privileges, and emoluments of the office, and entitled to qualify as trustees. Contestees are appealing.

It is stated in brief for appellees (contestants) that they abandoned the first grounds of contest and concede that W. R. Bates, Annie Bates, and Jane Bates were legal voters, and so stated in the court below. Appellants (contestees) concede in brief that Sam Lewis, Edna Lewis, Bonnie Duke and Newell Combs were not legal voters. These concessions by counsel for respective parties only leave for determination the legality of the votes cast by the remaining nine persons whose votes were called in question, and if the lower court's finding that Pierce Bowling, Hattie Bowling, Sallie Bowling, Troy Back, and Fred Stamper were not legal voters of subdistrict 70, then the judgment should be affirmed, since appellees would have a majority of the legal votes cast without taking into account the other votes in controversy.

Subdistrict 70 was cut off the Bull Creek district 35, and later what is known as the Carcassonne consolidated school district was created. It included in its

boundary the Bull Creek subdistrict 35 and was given that number; however, it appears in evidence that there have been some changes in the boundary lines between districts 35 and 70. There is a sharp conflict in evidence as to which of these districts includes the home in which Pierce Bowling, Hattie Bowling, and Sallie Bowling resided at the time of the election. The boundaries of the districts as given in the record are so vague and indefinite that it cannot be determined therefrom which district includes this residence; however, a number of witnesses who are acquainted with the boundaries testified that these voters live in district 35. While, as indicated, there is a conflict in evidence on this question, it may be said that if the evidence does not in fact preponderate to sustain the chancellor's finding that these parties were not legal voters in subdistrict 70, there unquestionably remains such doubt as would forbid this court interfering with the finding in that respect.

The evidence discloses that Jessie Back owns a small farm in subdistrict No. 70 upon which he and his wife, Jane Back, and his unmarried son, Marlin Back, formerly resided. His married son, Troy Back, and his wife lived with them. In the early part of the year 1932, Jessie Back with his family, including Troy and his wife, moved to Knott county where the former had rented a farm for a term of one year. He left some canned fruit and other personal effects in the residence under some sort of arrangement with his tenant. While he testified that he might, or that at some indefinite time he intended to, return to his home, it is apparent from a consideration of all the proven facts and circumstances that the expressed doubt of the chancellor as to the legality of his vote, as well as that of his wife and his son Marlin, is well grounded. But Troy Back owns no home or property in this subdistrict, and notwithstanding his evidence that his absence therefrom is temporary, the chancellor's finding that he was not a legal voter in subdistrict No. 70 at the time of the election finds ample support in evidence, and will not be disturbed.

It is shown that Fred Stamper had not lived in Knott county for some months before the election, but formerly, and especially in his youth, had spent much of his time in the home of his uncle, Floyd Back, in subdistrict No. 70; that he still kept a chiffonier and some

wearing apparel there. Mr. Back and others testified that he had gone from place to place where he was employed, but that he frequently returned to Mr. Back's home for clothing, and often spent a day or more there. However, the proof that Stamper made his home with his uncle is not convincing, since it is shown that during much of the time spent by him in this subdistrict he boarded at a home near that of his uncle. The evidence clearly indicates that this voter has no fixed place of abode, and it is significant that he was not called as a witness. The evidence of others as to his residence fails to sustain the contention of appellant that the court erred in not adjudging him to be a legal voter.

Wherefore, it appearing that the contestants received the highest number of legal votes cast at the election, the judgment is affirmed.